XAVIER BECERRA, State Bar No. 118517
Attorney General of California
DAMON G. MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6008
 Fax: (916) 324-5205
 E-mail: Jeremy.Duggan@doj.ca.gov
*Attorneys for Defendants
Diaz and Lynch*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **FERNANDO SAMANIEGO,**<br><br>                                    Plaintiff,<br><br>      v.<br><br>**CDCR, et al.,**<br><br>                                    Defendants. | Case No. 2:19-cv-02606 TLN KJN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:             April 23, 2020<br>Time:             10:00 a.m.<br>Courtroom:   25, 8th Floor<br>Judge:           The Honorable Kendall J. Newman<br>Trial Date:     Not set<br>Action Filed: December 24, 2019 |

/ / /

/ / /

/ / /

# INTRODUCTION

Plaintiff Fernando Samaniego asserts that Lynch, the warden at California State Prison, Sacramento (CSP-Sac), and Diaz, the Secretary of the California Department of Corrections and Rehabilitation (CDCR), failed to protect Samaniego, or intervene on his behalf, when he was attacked by five other inmates on the prison yard. But Lynch and Diaz were not on the yard, or anywhere near the incident. Nor were they involved it the decision Plaintiff apparently blames for the attack to house Plaintiff in a "Non-Designated Programming Prison Yard" at CSP-Sac.

Prisons are given broad deference to determine where inmates are housed, and Plaintiff does not plead facts showing that adopting a policy introducing non-designated yards was itself unconstitutional. Moreover, to the extent such a claim were stated, Defendants are entitled to qualified immunity.

To state a claim, Samaniego must plead facts showing that Defendants knew of, and disregarded a serious risk to his safety. Samaniego pleads no such facts as to either Defendant. Defendants' motion to dismiss should be granted.

# ALLEGATIONS

Plaintiff Samaniego alleges as follows:

Samaniego is serving his second term in CDCR custody. (Compl. ¶ 17, ECF No. 1.) In his first term, beginning in 2011, Samaniego was identified by CDCR officials as a member of a Sureno street gang known as East Side Bolen. (*Id.* ¶ 18.) Samaniego spent approximately three years in prison for his first term, most of which was spent either in general population or administrative segregation. (*Id.* ¶ 19.) Samaniego was convicted of another crime, and reentered CDCR custody in December 2014. (*Id.* ¶¶ 20-22.)

Upon entering CDCR custody in December 2014, Samaniego informed staff that he wished to drop out of his gang, and wished to be designated as a Sensitive Needs Yard (SNY) inmate. (*Id.* ¶ 22.) Samaniego also believed that his child endangerment conviction could expose him to attack from fellow inmates. (*Id.* ¶ 24.) Samaniego was placed on SNY yards at several prisons

1

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:19-cv-02606 TLN KJN)

from December 2014 to November 2017.  (*Id.* ¶¶ 28-33.)  The objective of the SNY yard housing was to separate inmates like Samaniego from gang members and known enemies.  (*Id.* ¶ 26.)

Samaniego's face was, and is, covered with tattoos indicating his former gang affiliation.  (*Id.* ¶ 34.)  Defendants would have known of Samaniego's gang ties based on his facial tattoos.  (*Id.* ¶ 35.)

Samaniego was eligible for and in need of mental health service while in CDCR custody.  (*Id.* ¶ 36.)  In August 2018, his level of mental health care was elevated to the Enhanced Outpatient (EOP) level.  (*Id.*)

In or around May 2018, CDCR introduced a policy of "Non-Designated Prison Programming Yards" with the result that SNY inmates would no longer necessarily be segregated from general population inmates.  (*Id.* ¶ 39.)  On September 28, 2018 appeared before a classification committee for consideration for placement on a "Non-Designated Prison Programming Prison Yard."  (*Id.* ¶ 40.)  He was then transferred to a "Non-Designated Prison Programming Prison Yard."  (*Id.* ¶ 38.)

Defendants were aware that implementation of "Non-Designated Programming Prison Yards" had resulted in injuries at other prisons in California.  (*Id.* ¶ 42.)

On November 1, 2018, Samaniego entered an integrated yard and was attacked by five other inmates, causing severe injuries.  (*Id.* ¶¶ 44, 53.)  Several correctional officers at the scene did not take sufficient action to stop the attack.  (*Id.* ¶ 47.)

Since the attack, Samaniego has been granted medical parole and is in custody at San Fernando Acute Care Hospital.  (*Id.* ¶¶ 57-58.)

**PLAINTIFF'S CAUSES OF ACTION**

The Court screened the Complaint and found potentially cognizable claims against Defendants Lynch and Diaz in their individual capacities for failure to protect Plaintiff from harm, and failure to intervene to protect Plaintiff from physical harm.  (Findings and Recommendations 6, ECF No. 4.)  Plaintiff's remaining claims were dismissed with prejudice.  (Order 1-2, ECF No. 7.)  Plaintiff seeks damages and attorney fees.  (*Id.* ¶¶ 60-61.)

2

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:19-cv-02606 TLN KJN)

## STANDARD ON MOTION TO DISMISS

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Dismissal is proper where the complaint does not contain enough factual allegations, when taken as true, to establish "plausible," as opposed to merely "possible" or "speculative," entitlement to relief. *Bell Atlantic Corp.*, 550 U.S. at 555. Although detailed factual allegations are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 555, 557).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Erickson*, 551 U.S. at 94. However, courts should not "supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Additionally, courts "are not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

The Court's screening order does not preclude a motion to dismiss. The Court screened Plaintiff's complaint under 28 U.S.C. § 1915A, for the purpose of determining whether it is frivolous, malicious, or fails to state a claim on which relief can be granted. (Findings and

3

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:19-cv-02606 TLN KJN)

1  Recommendations, ECF No. 4.)  That screening does not deprive Defendants of their right to
2  move to dismiss.  *See Teahen v. Wilhelm*, 481 F.Supp. 2d 1115, 1119 (S.D. Cal. 2007).
3        Defendants believe review at the motion to dismiss stage is appropriate to address both the
4  lack of factual allegations as to their conduct, and their qualified immunity defense.  Because
5  those defenses are clear on the face of the First Amended Complaint, Defendants now ask this
6  Court to consider them.

## LEGAL ARGUMENT

### I. THE ALLEGATIONS FAIL TO SHOW THAT DEFENDANTS LYNCH AND DIAZ VIOLATED SAMANIEGO'S CONSTITUTIONAL RIGHTS.

Plaintiff attempts to hold Defendants Diaz and Lynch liable for the assault he suffered at the hands of other inmates.  Plaintiff's failure to protect and failure to intervene claims require a showing that Defendants were deliberately indifferent to Plaintiff's safety.  That is, they knew of, and disregarded a serious risk to Plaintiff.  The Complaint pleads no facts that could support such a finding.  Accordingly, Plaintiff fails to state a claim against Diaz and Lynch.

### A. Plaintiff Fails to State a Claim for Failure to Protect.

To establish a violation of a prison official's duty to protect an inmate, the plaintiff must show that prison officials were "deliberately indifferent" to serious threats to the inmate's safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  At the pleading stage, a plaintiff must set forth facts to show that a defendant knew of, but disregarded, an excessive risk to his safety.  *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

Plaintiff does not allege facts sufficient to support a conclusion that either Diaz or Lynch knew of a serious risk of harm to him, much less that they disregarded that risk.  Indeed, the facts pled do not support a conclusion that Diaz and Lynch knew anything about Samaniego at all.

Rather than pleading facts about Diaz and Lynch, Plaintiff's complaint alleges only that "DEFENDANTS" — a term which in this context includes CDCR, CSP-Sac, and ten Doe Defendants — collectively knew that Samaniego was at risk of harm from other inmates, and that placing Samaniego on a non-designated yard would increase that risk.  (*See, e.g.* Compl. ¶¶ 21,

4

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:19-cv-02606 TLN KJN)

26, 27, 35, 40, 42, 43.) Those generic allegations are nothing more than a "formulaic recitation of the elements" of the cause of action. *Bell Atlantic Corp.*, 550 U.S. at 555. That type of "naked assertion" devoid of "further factual enhancement" is insufficient to state a claim in federal court. *Id.* at 557. Beyond such generic statements, Plaintiff pleads no facts at all with regard to Defendants' conduct, and accordingly fails to state a claim against Diaz and Lynch.

To state a viable § 1983 claim, Plaintiff must, "at a minimum, allege facts which demonstrate the specific acts each individual defendant did and how that individual's alleged misconduct specifically violated plaintiff's constitutional rights." *El-Shaddai v. Zamora*, No. CV 13-2327 RGK(JC), 2017 WL 3358486, at *8 (C.D. Cal. Aug. 3, 2017) (emphasis in original). Plaintiff fails to allege any conduct on the part of Defendants Diaz and Lynch. Rather he asserts that the decision to place him on a non-designated yard was made by a "classification committee," that did not include Defendants. (*See* Compl. ¶ 40.)

Nor may Diaz and Lynch be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. at 676. Rather, to establish liability, a plaintiff must plead facts showing that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. at 676. Plaintiff fails to plead any conduct by Diaz and Lynch that could violate the Constitution; Plaintiff's failure to protect cause of action should be dismissed.

**B.     Plaintiff Fails to State a Claim for Failure to Intervene.**

Plaintiff's failure to intervene claim asserts that officers were "standing by and observing while Samaniego was brutally beaten by five assailants in plain view of Defendants." (Compl. ¶ 74.) But Defendants Lynch and Diaz were not present at the time, and accordingly are not liable for failure to intervene.

A failure to intervene claim under the Eighth Amendment requires a showing of deliberate indifference. *Robins v. Centinela State Prison*, 19 F. App'x 549, 551 (9th Cir. 2001) (requiring that plaintiff's failure to intervene claim show "deliberate indifference" to Plaintiff's harm; a showing that Defendant had "a mere suspicion that harm will occur" is not enough); *see also Del Raine v. Williford,* 32 F.3d 1024, 1038 (7th Cir. 1994) (failure to intervene cause of action

5

1 requires showing of "actual knowledge" of impending, easily preventable harm); *Buckner v.*
2 *Hollins*, 983 F.2d 119, 122 (8th Cir. 1993) (failure to intervene claim requires showing that
3 defendant "acted with deliberate indifference"); *Robins v. Meecham,* 60 F.3d 1436, 1442 (9th Cir.
4 1995) (citing *Del Raine* and *Buckner* matters).  Samaniego must therefore plead facts showing
5 that Defendants Diaz and Lynch knew of, but disregarded an excessive risk to his safety during
6 the alleged beating.  *See Farmer*, 511 U.S. at 837.

7       Plaintiff pleads no facts showing that Diaz and Lynch were aware of the alleged November
8 1 attack.  The complaint alleges that "approximately five correctional officers" were present, but
9 not Secretary Diaz or Warden Lynch.  (Compl. ¶¶ 46-47.)  Plaintiff later asserts that the beating
10 took place "in plain view of [all] DEFENDANTS."  (Compl. ¶ 74.)  That is another "naked
11 assertion" devoid of factual enhancement, and cannot support a failure to intervene cause of
12 action.  *See Bell Atlantic Corp.*, 550 U.S. at 555.  Plaintiff's failure to intervene claim should be
13 dismissed.

14       **C.**    **Plaintiff Fails to State a Claim Based on the Alleged Policy.**

15       Plaintiff asserts that in May 2018 "CDCR and ALL DEFENDANTS implemented a policy
16 of 'Non-designated Prison Programming Yards'" intended to integrate SNY inmates with general
17 population inmates, and that Plaintiff was placed on such a yard.  (Compl. ¶¶ 38-39.)  Plaintiff's
18 allegations with regard to that policy fail to state a claim on which relief may be granted.

19       Liability for policies and practices may exist if supervisory officials implement "a policy so
20 deficient that the policy itself is a repudiation of constitutional rights and is the moving force of
21 the constitutional violation."  *Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995) (quoting
22 *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1996)); *see also Polk County v.*
23 *Dodson*, 454 U.S. 312, 326 (1981).  Plaintiff does not assert that the policy is unconstitutional on
24 its face.  Instead, the Complaint states that the policy warranted "a careful and highly deliberate
25 manner of integration" to avoid assaults.  (Compl. ¶ 42.)  Thus, according to Plaintiff, the policy
26 could have been applied with sufficient care to protect his Constitutional rights, but was not.

27       Where the policy is not unconstitutional on its face, a plaintiff must separately prove fault
28 on the part of the supervisor and an "affirmative link" between the adoption of the policy and a

6

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:19-cv-02606 TLN KJN)

deprivation of his constitutional rights to establish supervisory liability based on a policy that is not unconstitutional on its face. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985). That is, the supervisor must express "authorization or approval" of unconstitutional conduct through the adoption or maintenance of the policy. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). A single incident is insufficient to show fault. *City of Oklahoma City*, 471 U.S. at 820

The decision to integrate programming inmates is entitled to the Court's deference. "Protecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg v. Klincheloe*, 794 F.2d 457, 460 (9th Cir. 1986). "The Supreme Court has stated that deference to the decisions of prison officials also extends to prophylactic or preventive measures intended to reduce the incidence of . . . . breaches of prison discipline." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). A plaintiff must show "that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Thomas*, 611 F.3d at 1150 (citing *Farmer*, 511 U.S. at 844). Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Plaintiff does not plead facts showing that Lynch and Diaz adopted this policy without reasonable justification, or that their adoption of the policy expressed approval of any known unconstitutional conduct. Plaintiff therefore fails to state a claim that Diaz and Lynch are liable due to the "Non-Designated Prison Programming Yard" policy.

**D.    Plaintiff Fails to State a Claim for Failure to Train**

Plaintiff asserts a claim against all Defendants for "[f]ailing to adequately train, supervise, and control correctional officers." (Compl. ¶ 82.) The Court's screening appeared to dismiss all claims apart from the failure to protect and failure to intervene claims addressed above. (Findings and Recommendations 6.) The Court's order did not, however, specifically address the failure to train claim. (*See generally id.*) To the extent Plaintiff's failure to train claim has not already been dismissed, it should be dismissed now.

Government officials are not liable for the unconstitutional conduct of their subordinates. *Iqbal*, 556 U.S. at 676. There are, however, "limited circumstances in which an allegation of a

7

'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Those cases arise when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [officials] can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390; *see also Wardell v. Nollette,* No. C05-0741RSL*,* 2006 U.S. Dist. LEXIS 26818, at *10 (W.D. Wash. Apr. 20, 2006) ("The cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious choices made with full knowledge that a problem existed."). Moreover, for a failure to train claim, the alleged training failure "must be closely related to the ultimate injury." *City of Canton*, 489 U.S. at 380.

Here, Plaintiff fails to identify any obvious need for additional training, and does not identify any training that would have prevented his injuries. Instead Plaintiff makes a list of generalized deprivations that supposedly occurred at CSP-Sac without any factual support. (*See, e.g.,* Compl. ¶ 82 ("Failing to adequately train, supervise, and control correctional officers in the proper recognition of dangerous inmates and violent situations.") Those conclusory assertions cannot support a failure to train claim. *See Moss v. U.S. Secret Servs.*, 711 F.3d 941, 968 (9th Cir. 2013) (finding plaintiffs' supervisory claim inadequate where "[t]he protestors claim that 'the use of overwhelming and constitutionally excessive force against them' was 'the result of inadequate and improper training, supervision, instruction and discipline . . . under the personal direction . . . of the . . . Police Defendants . . . . . The protestors allege no facts whatsoever about the officers' training or supervision, nor do they specify in what way any such training was deficient.") Plaintiff's generic recitations fail to plead facts showing a failure to train violation. To the extent it has not been dismissed already, Plaintiffs' failure to train cause of action should be dismissed now.

## II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT WAS NOT CLEARLY ESTABLISHED THAT THEIR ACTIONS VIOLATED ANY CONSTITUTIONAL RIGHT

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal or statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly

8

established at the time.'" *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017). A plaintiff must prove both prongs of this inquiry to establish that an official is not entitled to qualified immunity. *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012). The court may address these questions in the order most appropriate to the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, Plaintiff can establish neither prong of this inquiry, and Defendants are entitled to qualified immunity.

Defendants are entitled to qualified immunity because they did not violate the Eighth Amendment. As explained earlier, the allegations against the Defendants Lynch and Diaz fail to state a claim for failure to protect or failure to intervene. Thus, under the first prong of the qualified immunity inquiry, these Defendants are entitled to qualified immunity.

But even if these Defendants' actions were found to have violated Plaintiff's Eighth Amendment rights, Defendants are entitled to qualified immunity because it was not clearly established that their actions were unconstitutional. Under the second prong of the qualified immunity analysis, the unlawfulness of official conduct is "clearly established" if, "at the time of the officer's conduct, the law was 'sufficiently clear' that 'every reasonable official would understand that what he is doing' is unlawful." *Wesby,* 138 S. Ct. at 589 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby,* 138 S. Ct. at 589 (quoting *al-Kidd,* at 741).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law,' *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (*per curiam*), which means it is dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority,"'" *Wesby,* 138 S. Ct. at 589-90 (quoting *al-Kidd*, at 741-42) (quoting *Wilson v. Layne,* 526 U.S. 603, 617 (1999)). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590.

9

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him*. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2019). Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap*, 931 F.2d 624, 627 (9th Cir. 1991).

The only conduct Plaintiff identifies here is adopting a policy to integrate SNY and general population yards. (*See, e.g.,* Compl. ¶¶ 39-40.) There is no case law holding that housing those inmates together violates the Eighth Amendment. Indeed, as the Supreme Court has recognized, "prisons by definition, are places of involuntary confinement of persons who have demonstrated proclivity for antisocial, criminal, and often violent conduct." *Hudson*, 468 U.S. 517, 526 (1984). Many prisoners are unpredictable. The prison setting is, at best, tense. It is sometimes explosive, and always potentially dangerous. *Berg v Kincheloe*, 794 F.2d at 461. "Choosing the optimal 'prophylactic or preventive measures' to prevent violence and maintain safety is difficult and not readily susceptible to judicial evaluation." *Id.* (citations omitted). It is not clearly established that adopting a "Non-Designated Prison Programming Facility" policy violates the Eighth Amendment. Accordingly, Defendants Diaz and Lynch are entitled to qualified immunity to Plaintiff's claims.

///

///

///

10

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:19-cv-02606 TLN KJN)

# CONCLUSION

Plaintiff fails to plead facts showing that either Diaz or Lynch violated his Constitutional rights. Additionally, Defendants are entitled to qualified immunity from Plaintiff's claims because it was not clearly established that their actions violated the Constitution. The Court should therefore dismiss the First Amended Complaint.

Dated: March 24, 2020

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
DAMON G. MCCLAIN
Supervising Deputy Attorney General
PREETI BAJWA
Deputy Attorney General

*/s/ Jeremy Duggan*

JEREMY DUGGAN
Deputy Attorney General
*Attorneys for Defendants
Diaz and Lynch*

SA2020100725
14525097.docx

11

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:19-cv-02606 TLN KJN)